UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DOMINIQUE RASHAN DUDLEY,                                                               Plaintiff,

v.                                                                       Civil Action No. 3:21-cv-P10-DJH

TYLER STROUGH *et al.*,                                                       Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Dominique Rashan Dudley filed the instant *pro se* 42 U.S.C. § 1983 action. Plaintiff paid the filing fee. The complaint is now before the Court for initial screening pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the Court will allow some of Plaintiff's claims to proceed and dismiss other claims.

### I. SUMMARY OF FACTUAL ALLEGATIONS

Plaintiff is a convicted inmate at the Kentucky State Reformatory (KSR). He sues the following KSR personnel: Lieutenant Tyler Strough; Sergeant Blake Taylor; "Lieutenant/ Investigator" Zachary Terorde; "Captain/Supervisor" Kayla Cantrall; "Captain/Supervisor" Jonathan D. Clayton; "Sergeant/Investigator" Andrew Christian; and "CUAI" Daniel King. He sues each Defendant in his or her individual and official capacities.

Plaintiff states that he is Muslim and that on May 17, 2020, while participating in Ramadan, he went to the administrative wing of KSR to receive a food tray. He alleges that when inmates were receiving their food trays, "Defendant Strough come out of the captain's office and begin to harass the Muslim residents while we are receiving our trays for the evening." According to the complaint, Defendant Strough stated, "Do you Muslims think you don't have to follow the rules around here." When Plaintiff asked him what rule he was

referencing, Defendant Strough responded that it was a rule concerning locations where inmates were required to wear masks. Plaintiff states that he showed Defendant Strough a memo sent by KSR Warden Anna Valentine which indicated that inmates were not required to wear masks in the administrative wing. He reports that Defendant Strough responded that the Warden was not there and that "'you are going to do what I tell you to do.'" Plaintiff states that he "politely" told Defendant Strough that he was not in a location where masks were required.

Plaintiff alleges that Defendant Strough was then joined by Defendant Taylor who handed him handcuffs and "spray." Defendant Strough handcuffed Plaintiff and said, "I'm sick of you Muslims thinking the rules don't apply to you. Wait till we get your ass in the back, we can show you better than we can tell you." Plaintiff then states as follows:

> [] I turned and told Defendant Strough he is not going to nothing to me, and why is he putting me in the hole because he is wrong. He then stated, "I'm putting you in the hole for a non-violent to show you i run things here not Valentine." At this time Defendant Taylor is squeezing my arm, and I tried to jerk away from his grasp because he should not have been squeezing my arm.
>
> [] Defendant Taylor uses his body with excessive amount of force and shoves me into the wall with intention of causing harm. I told Defendant Taylor you doing is considered attacking me. Then Defendant Taylor uses force excessive amount of force when taking me to the ground.
>
> [] During the process of this, Defendant Strough used his taser on me. I rolled over onto my back, and one of my arms came out of the handcuffs. I was trying to stop Defendant Strough from using his taser on me. Defendant Strough kept trying to use his taser on me taser comes out of his hands and slides across the floor.
>
> [] Other guards have now come to assist Defendant Strough and Defendant Taylor. While all the guards are holding me down defendant Strough uses his taser on separate occasions, while the other correctional officer are holding me down.

According to the complaint, Plaintiff was then placed in a restraint chair and moved to a cell in the Restrictive Housing Unit. Plaintiff maintains that, when his "time [was] up" in the restraint chair, Defendant Terorde was the supervisor of the Restrictive Housing Unit and

2

advised his team "to strip me out of my cloths to were i would be naked." Plaintiff states, "I told the cert team, to stop stripping me of my cloths, and that i wanted to file [Prison Rape Elimination Act (PREA)]. Defendant Terorde begin saying outloud that i was resisting, and that he was gone tase me. At this point he has put the taser to my ribcage." He further states that he told Defendant Terorde that if he tased him he would lose his job because the camera showed that he was not resisting. Plaintiff further states as follows:

> [] Once i got in the chair the officer secured my legs in the leg restraint. Defendant Terorde told me to lean forward. I told him no . . . because the officers of K.S.R. have already acting outside the rules and policy of the department of corrections (D.O.C.). Defendant Terorde then tase me in my back.
>
> [] After he tased me in my back I lean forward and begun making comments towards him, because he has told the officers under his command forcedly stripped me against me, and he has now assaulted me with his taser. Defendant Terorde has now tased me a second time, after i was leaned as he instructed me to be. I was placed back into a cell on c-wing until my time in the restraint chair has concluded.

Plaintiff alleges that no one talked to him about his request to file a PREA complaint.

Plaintiff further states that Defendant Cantrall reviewed Disciplinary Report # KSR-2020-0001382 filed against him by Defendant Strough. He states that Defendant Cantrall should have dismissed the disciplinary report because she had access to the Warden's memorandum regarding masks but that "she refused to report and acknowledge defendant Strough's and Taylor's wrong doings." Plaintiff asserts that Defendant Terorde also investigated the disciplinary report and was aware of the rules concerning masks but told Plaintiff that "regardless of what the rules you have to do what we say no questions ask."

Plaintiff states that Defendant Clayton reviewed Disciplinary Report # KSR-2020-0001394. He states that Defendant Terorde reported that Plaintiff had threatened staff members during the interaction. Plaintiff argues that the disciplinary report should have been dismissed "due to Defendant Terorde giving false information in the course of an investigation, and not

3

attaching the camera footage to the disciplinary report." He continues, "There was no evidence attach to the write up or statements from the other officers. Defendant Clayton violated the Plaintiff's due process."

Plaintiff also states that Defendant Cantrell reviewed Disciplinary Report # KSR-2020-0001383. He alleges that Defendant Strough "failed to included how Defendant Taylor used excessive amount of force and shoves me into the wall with intention of causing harm." He also asserted that "Defendant Strough failed to include how his coworker used force when I was taken to the ground . . . [and] failed to include how he tased me two more separate times during the course of this event while other officers were holding me down." He states that Defendant Cantrell violated his right to due process.

Plaintiff asserts that Defendant Christian was involved in investigating Disciplinary Report # KSR-2020-0001394 and found that Plaintiff had threatened officers. He states that Defendant Christian violated his right to due process "by not reviewing the camera footage that he has access to, which would have showed that the filing officer made false statements in the investigation."

Against Defendant Strough, Plaintiff alleges claims of assault and battery; failure to follow Kentucky Department of Corrections (KDOC) rules, policies, and procedures; excessive force; violation of his First Amendment rights to freedom of speech and religion; violation of the Fourth Amendment, Eighth Amendment, and Fourteenth Amendments; and official misconduct.

With regard to Defendant Taylor, Plaintiff alleges assault and battery; failure to follow KDOC rules; excessive force; and official misconduct.

With regard to Defendants Cantrall, Clayton, Terorde, Christian, and King, Plaintiff alleges violations of his Fourteenth Amendment right to due process. He also alleges that they

4

are "accessories after the fact" in violation of the Eighth Amendment for not reporting their co-workers to Internal Affairs for assault and battery. Plaintiff additionally alleges claims against Defendant Terorde for violation of the Eighth Amendment, assault and battery, and official misconduct.

As relief, Plaintiff seeks punitive damages and injunctive relief.

## II. STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to

be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### III. ANALYSIS

#### *A. Official-capacity claims*

Plaintiff sues Defendants in their official capacities. "[O]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Defendants are employees of KSR and are therefore state employees. Claims brought against state employees in their official capacities are deemed claims against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. State officials sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Further, the Eleventh Amendment acts as a bar to claims for monetary damages against state employees or officers sued in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169. Therefore, Plaintiff's official-capacity claims against Defendants for monetary damages must be dismissed for failure to state a claim upon which relief may be granted and for seeking monetary relief from a defendant who is immune from such relief.

Plaintiff also demands injunctive relief in the form of ordering the suspension or termination of Defendants and ordering that KDOC employees wear body cameras.[1] The Court has no authority to order the suspension or termination of a Defendant under § 1983. *See, e.g.*, *Nation v. Jordan*, No. 5:20-CV-P182-TBR, 2021 U.S. Dist. LEXIS 77109, at *3-4 (W.D. Ky. Apr. 22, 2021) (holding that the court lacked authority to grant injunctive relief in the form of

---

[1] Plaintiff also requests the Court to order "all disciplinary reports related to this incident be deleted from the plaintiff file." That request will be dismissed below in the context of his Fourteenth Amendment due-process claim.

terminating the defendant from his employment); *Ross v. Reed*, No. 1:13-cv-143, 2013 U.S. Dist. LEXIS 44697, at *5-6 (S.D. Ohio Mar. 5, 2013) ("The Court has no authority under § 1983 to direct the . . . police department to initiate any disciplinary proceedings against its employees."); *Theriot v. Woods*, No. 2:09-cv-199, 2010 U.S. Dist. LEXIS 14253, at *10-11 (W.D. Mich. Feb. 18, 2010) (holding that requesting injunctive relief in the form of ordering the firing of defendants is "frivolous," "entirely improper," and "not available under 42 U.S.C. § 1983" and that the court "has no authority under 42 U.S.C. § 1983 to . . . terminate the employment of [the defendants]").

In the same vein, the Court does not have the authority to order KDOC to require its employees to wear body cameras. The Supreme Court has recognized that "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions." *Bell v. Wolfish*, 441 U.S. 520, 562 (1979). "Prison officials therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.*; *see also Barrington v. New York*, 806 F. Supp. 2d 730, 750 (S.D.N.Y. 2011) (dismissing inmate's request for injunctive relief seeking an order directing prison to install security cameras as overly broad and unnecessary to correct the alleged past violations of his rights).

Accordingly, Plaintiff's official-capacity claims for injunctive relief must be dismissed for failure to state a claim upon which relief may be granted.

### B. Individual-capacity claims

#### 1. Fourteenth Amendment claims

Plaintiff alleges violation of the Fourteenth Amendment's Due Process Clause against Defendants Strough, Cantrall, Clayton, Terorde, Christian, and King. With regard to Defendant

7

Strough, the Court construes the complaint as alleging that Defendant Strough violated Plaintiff's right to due process by filing a false disciplinary report against him. The Sixth Circuit has held that "[a] prisoner has no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). For example, in *Jones v. McKinney*, No. 97-6424, 1998 U.S. App. LEXIS 32665, at *2-3 (6th Cir. 1998), the court held that the district court properly dismissed a prisoner complaint alleging prison officials "deliberately issued a false disciplinary report against him." The court noted that "[the prison official] did not violate [the prisoner's] constitutional rights, even if the disciplinary report was false, because a prisoner has no constitutionally protected immunity from being wrongly accused." *Id*. at *3. Therefore, the Court will dismiss Plaintiff's Fourteenth Amendment claim against Defendant Strough for failure to state a claim upon which relief may be granted.

In addition, the Court construes the complaint as alleging Fourteenth Amendment due-process claims against Defendants Cantrall, Clayton, Terorde, Christian, and King based on their handling of Plaintiff's disciplinary proceedings. To state a Fourteenth Amendment due-process claim, an inmate must allege a deprivation of a liberty interest protected by the Due Process Clause. To the extent that Plaintiff's disciplinary proceedings resulted in him receiving disciplinary segregation, the law is clear that inmates have no constitutional right to be incarcerated in any particular institution, a particular part of an institution, or a particular security classification, unless the state has created a liberty interest in remaining at a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245-48 (1983); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Beard v. Livesay*, 798 F.2d 847, 876 (6th Cir. 1986). This is not the case in Kentucky where classification, segregation, and transfer of prisoners are within the discretion of KDOC.

8

Ky. Rev. Stat. § 197.065. Therefore, Plaintiff's due-process claim based on placement in segregation fails to state a claim.

To the extent the disciplinary proceedings resulted in loss of good-time credit, the claims are not cognizable under *Heck v. Humphrey*, 512 U.S. 477 (1994). The *Heck* Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a . . . plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id*. at 486-87 (footnote omitted). The favorable-termination requirement of *Heck* applies to prisoner allegations of due-process violations in prison disciplinary hearings that result in the deprivation of good-time credits. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The *Heck* and *Edwards* bar applies no matter the relief sought—damages or injunctive relief. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). It is clear that Plaintiff was found guilty after the disciplinary proceedings about which he complains. There is no indication that Plaintiff's disciplinary convictions were reversed on appeal or otherwise invalidated. Thus, Plaintiff's due-process claim based on loss of good-time credit fails to state a claim.

Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment due-process claims for monetary and injunctive relief for failure to state a claim upon which relief may be granted.

### 2. First Amendment claims

Plaintiff also alleges First Amendment claims for violation of his rights to freedom of speech and religion against Defendant Strough. The Court cannot discern any facts in the complaint that support a violation of Plaintiff's freedom of speech. With regard to his freedom

9

of religion, the only allegations the Court could construe in support of such a claim are his allegations that Defendant Strough made harassing comments to him and other Muslim inmates about not following the rules. However, the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not rise to the level of a constitutional claim); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (same); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 U.S. App. LEXIS 1716, at *8 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Brown v. Madison Cty. Sheriff's Dep't*, No. 19-1231-JDT, 2019 U.S. Dist. LEXIS 192460, at *5 (W.D. Tenn. Nov. 6, 2019) (dismissing inmate's claim alleging verbal harassment based on religious beliefs). Therefore, Plaintiff's First Amendment claims will be dismissed for failure to state a claim.

### 3. Fourth Amendment claim

Plaintiff also alleges a Fourth Amendment violation against Defendant Strough. While it is unclear what allegations Plaintiff relies on in support of this claim, the Fourth Amendment's prohibition against unreasonable search and seizure applies to persons who are not in custody. A prisoner is not entitled to the protection of the Fourth Amendment against unreasonable searches and seizures. *Hudson v. Palmer*, 468 U.S. 517, 525-526 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."). Therefore, Plaintiff's Fourth Amendment claim will be dismissed for failure to state a claim.

10

#### 4. Claims based on failure to follow KDOC policies and procedures

Plaintiff also alleges that Defendants failed to follow KDOC policies and procedures. However, the failure of prison officials to follow institutional procedures or policies does not give rise to a constitutional claim. *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004) ("[S]tate law, by itself, cannot be the basis for a federal constitutional violation."); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (rejecting inmate's argument that prison failed to follow Michigan prison regulations in putting him in segregation). Therefore, Plaintiff's claims based on failure to follow KDOC policies and procedures will be dismissed for failure to state a claim.

#### 5. Official misconduct claims

Plaintiff also alleges a claim of "official misconduct" against each Defendant. The Court is unable to discern what federal claim Plaintiff is attempting to bring and construes the claim as attempting to allege a violation of a Kentucky criminal statute. *See* Ky. Rev. Stat. § 522.020 (crime of official misconduct in the first degree). "It is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General." *Powell v. Katzenbach*, 359 F.2d 234, 234 (D.C. Cir. 1965). The Court does not have the authority to direct that criminal charges be filed against anyone. *Peek v. Mitchell*, 419 F.2d 575, 577-78 (6th Cir. 1970); *Fleetwood v. Thompson*, 358 F. Supp. 310, 311 (N.D. Ill. 1972). Therefore, Plaintiff's claims alleging official misconduct must be dismissed for failure to state a claim.

### 6. Eighth Amendment and assault and battery claims

Upon review, the Court will allow Plaintiff's Eighth Amendment claims for excessive force and state-law assault and battery claims to continue against Defendants Strough, Taylor, and Terorde in their individual capacities.

Plaintiff also alleges that Defendants Cantrall, Clayton, Terorde, Christian, and King violated the Eighth Amendment as "accessories after the fact" because they did not report their co-workers to Internal Affairs for assault and battery. However, to state a claim for relief, Plaintiff must show how each Defendant is accountable because the Defendant was personally involved in the acts about which he complains. *See Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976). Liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Because Plaintiff does not show each Defendant's personal involvement with respect to these claims, Plaintiff's Eighth Amendment claims against Defendants Cantrall, Clayton, Terorde, Christian, and King based on their failure to act will be dismissed for failure to state a claim.

### IV. CONCLUSION

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Plaintiff's official-capacity claims against all Defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), (2) for failure to state a claim upon which relief may be granted and for seeking relief from a defendant who is immune from such relief.

**IT IS FURTHER ORDERED** that Plaintiff's individual-capacity claims for violation of the First, Fourth, and Fourteenth Amendment, claims based on failure to follow KDOC policies

and procedures, and claims for official misconduct are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's individual-capacity claims for violation of the Eighth Amendment against Defendants Cantrall, Clayton, Terorde, Christian, and King based on their failure to act are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The **Clerk of Court shall terminate** Defendants Cantrall, Clayton, Christian, and King as Defendants to the action as no claims remain against them.

The Court will enter a separate Service and Scheduling Order to govern the claims that have been permitted to proceed.

Date: June 17, 2021

David J. Hale, Judge
United States District Court

cc: Plaintiff, *pro se*
Defendants
General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4415.010