UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DOMINIQUE RASHAN DUDLEY,                                                    Plaintiff,

v.                                                      Civil Action No. 3:21-cv-P10-DJH

TYLER STROUGH *et al.*,                                                    Defendants.

* * * * *

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on the motion for summary judgment filed by Defendants

Tyler Strough, Blake Taylor, and Zachary Terorde (hereinafter "Defendants") (Docket No. 16).

Proceeding *pro se*, Plaintiff Dominique Rashan Dudley filed a response to the motion (DN 20),

and Defendants filed a reply (DN 19).  Because Plaintiff indicated in his response that he did not

receive a copy of the motion, the Court gave Plaintiff another opportunity to file a response

(DN 23).  Plaintiff then filed a second response to the motion (DN 24), and Defendants filed a

second reply (DN 25).  For the following reasons, Defendants' motion for summary judgment

will be granted.

**I**.

Plaintiff, an inmate at the Kentucky State Reformatory (KSR), initiated this 42 U.S.C.

§ 1983 prisoner civil rights action by filing a complaint signed under penalty of perjury (DN 1).

The Court conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915A and

dismissed Plaintiff's official-capacity claims against all Defendants and his individual-capacity

claims for violation of the First, Fourth, and Fourteenth Amendments; claims based on failure to

follow Kentucky Department of Corrections (KDOC) policies and procedures; claims for official

misconduct; and claims for violation of the Eighth Amendment against Kayla Cantrall, Jonathan

Clayton, Andrew Christian, and Daniel King (DN 7).  The Court allowed Plaintiff's Eighth

Amendment claims for excessive force and state-law assault-and-battery claims to continue

against Defendants Strough, Taylor, and Terorde in their individual capacities (DNs 7 and 8).

## A.

In the complaint, Plaintiff alleged that on May 17, 2020, he went to the KSR

administrative wing to receive a food tray for Ramadan.  (DN 1, PageID.7).  He reported that

Defendant Strough stated, "Do you Muslims think you don't have to follow the rules around

here." (*Id.*)  When Plaintiff asked him what rule he was referring to, Defendant Strough

responded that it was a rule concerning locations where inmates were required to wear masks.

(*Id.*)  Plaintiff stated that he showed Defendant Strough a memo sent by KSR Warden Anna

Valentine which indicated that inmates were not required to wear masks in the administrative

wing.  (*Id.*)  He asserted that Defendant Strough responded that the Warden was not there and

that "'you are going to do what I tell you to do.'"  (DN 1, PageID.8).  Plaintiff stated that he told

Defendant Strough that he was not in a location where masks were required.  (*Id.*)

Plaintiff alleged that Defendant Strough was then joined by Defendant Taylor who

handed him handcuffs and "spray."  (*Id.*)  Defendant Strough handcuffed Plaintiff and said, "I'm

sick of you Muslims thinking the rules don't apply to you.  Wait till we get your ass in the back,

we can show you better than we can tell you." (*Id.*)  Plaintiff then stated as follows:

> [] I turned and told Defendant Strough he is not going to nothing to me, and why
> is he putting me in the hole because he is wrong.  He then stated, "I'm putting you
> in the hole for a non-violent to show you i run things here not Valentine."  At this
> time Defendant Taylor is squeezing my arm, and I tried to jerk away from his
> grasp because he should not have been squeezing my arm.
>
> [] Defendant Taylor uses his body with excessive amount of force and shoves me
> into the wall with intention of causing harm.  I told Defendant Taylor you doing is
> considered attacking me.  Then Defendant Taylor uses . . . excessive amount of
> force when taking me to the ground.

> [] During the process of this, Defendant Strough used his taser on me.  I rolled over onto my back, and one of my arms came out of the handcuffs.  I was trying to stop Defendant Strough from using his taser on me.  Defendant Strough kept trying to use his taser on me taser comes out of his hands and slides across the floor.

> [] Other guards have now come to assist Defendant Strough and Defendant Taylor. While all the guards are holding me down defendant Strough uses his taser on separate occasions, while the other correctional officer are holding me down.

(DN 1, PageID.8-9).

Plaintiff was then placed in a restraint chair and moved to a cell in the Restrictive Housing Unit.  (DN 1, PageID.9).  When his "time [was] up" in the restraint chair, Defendant Terorde, who was the supervisor of the Restrictive Housing Unit, advised his team "to strip me out of my cloths to were i would be naked."  (*Id.*)  Plaintiff stated, "I told the cert team, to stop stripping me of my cloths, and that i wanted to file [Prison Rape Elimination Act (PREA)]. Defendant Terorde begin saying outloud that i was resisting, and that he was gone tase me.  At this point he has put the taser to my ribcage."  (*Id.*)  Plaintiff further stated that he told Defendant Terorde that if he tased him he would lose his job because the camera showed that he was not resisting.  (*Id.*)  Plaintiff also alleged as follows:

> [] Once i got in the chair the officer secured my legs in the leg restraint. Defendant Terorde told me to lean forward.  I told him no . . . because the officers of K.S.R. have already acting outside the rules and policy of the department of corrections (D.O.C.).  Defendant Terorde then tase me in my back.

> [] After he tased me in my back I lean forward and begun making comments towards him, because he has told the officers under his command forcedly stripped me against me, and he has now assaulted me with his taser.  Defendant Terorde has now tased me a second time, after i was leaned as he instructed me to be.  I was placed back into a cell on c-wing until my time in the restraint chair has concluded.

(DN 1, PageID.10).

**B.**

Defendants filed a motion for summary judgment (DN 16), in which they argue that Plaintiff's claims must be dismissed because he failed to comply with the exhaustion requirements under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), and Ky. Rev. Stat. § 454.15.  (DN 16, PageID.160).  They state that "Plaintiff initiated no grievances pursuant to the established Inmate Grievance Procedure contained in CPP 14.6 involving the two incidents of which he complains."  (*Id.*)  Defendants further maintain, "Plaintiff's total lack of any attempt to avail himself of his administrative remedies deprived KDOC personnel the opportunity to investigate and rule on his grievances and now this Court is without a record of any action below to review."  (*Id.*)  Defendants attach the affidavit of James C. Holcomb, who avers that he is the Grievance/Legal Coordinator and is the custodian of grievances maintained at KSR.  (DN 16-1, PageID.164).  Holcomb avers that he has reviewed the grievance records and that they "do not contain any grievances filed by inmate Dominique Rashan Dudley, #265335, related to an incident that is alleged to have occurred at KSR on May 17, 2020, regarding claims of use of excessive force" by Defendants Strough or Taylor.  (*Id.*, PageID.164-65).  He also avers that the records "do not contain any grievances filed by inmate Dominique Rashan Dudley, #265335, related to an incident that is alleged to have occurred at KSR on May 17, 2020, regarding claims of use of excessive force" by Defendant Terorde.  (*Id.*, PageID.165).  Defendants also attach Kentucky Corrections Policies and Procedures (CPP) 14.6 setting forth the KDOC grievance policy.  (DN 16-3, PageID.166-91).

Plaintiff filed a response to the motion in which he primarily makes arguments in support of his motion for preliminary injunction concerning the handling of his legal mail (DN 20,

PageID.231-240).[1]  In response to the motion for summary judgment, Plaintiff argues that he was not required to exhaust administrative remedies because "Per C.P.P. 14.6 the Plaintiff issues that would be f[]iled fall under non-grievable (C) (4)."  (DN 20, PageID.240).  He continues, "The Plaintiff received disciplinary report that had formally been dismissed.  Every issue that the Plaintiff would have file a grievance on falls under that category of the policy because it was listed in the disciplinary report."  (*Id.*)  Plaintiff argues that the KDOC "has not published procedures for grieving a dismissed disciplinary report[], because the process for disciplinary reports has an appeal process, and because two of the Plaintiff disciplinary reports were dismissed the plaintiff did not have further administrative remedies to exhaust."  (DN 20, PageID.241).  He states, "The remaining disciplinary report that was not dismissed the plaintiff appealed to the highest level of the appeal process in the administrative remedies."  (*Id.*)  Plaintiff attaches an affidavit to his response, but the affidavit concerns the issue of his legal mail.  (DN 20-1, PageID.246-48).

Because Plaintiff seemed to suggest in his first response that, due to the handling of his mail, he may not have received Defendants' motion for summary judgment (DN 20, PageID.240), the Court entered an Order (DN 23) giving Plaintiff another opportunity to respond to the motion for summary judgment and providing him general guidance in responding to a motion for summary judgment under Fed. R. Civ. P. 56 consistent with *United States v. Ninety-Three Firearms*, 330 F.3d 414, 427 (6th Cir. 2003) (holding that a *pro se* prisoner litigant is "entitled to notice of the consequences of a summary judgment motion and the requirements of the summary judgment rule").

Plaintiff then filed a second response in which he again argues that he was not required to exhaust his administrative remedies because the issues were non-grievable.  (DN 24).  He points

---

[1] The Court denied Plaintiff's motion for preliminary injunction by prior Memorandum and Order (DN 22).

to CPP 14.6(II)(C)(4) and maintains that the policy "clearly states, 'Disciplinary procedures, Adjustment Committee decision, Unit Hearing Officer decision, Adjustment Officer decision, Unit Hearing Officer decision, Adjustment Officer decision, or Warden's review of these decisions, incident where the grievant received a disciplinary report, or incident where the grievant received a disciplinary report and the report has been dismissed." (DN 24, PageID.285). Plaintiff attaches CPP 14.6(II)(C) to his response. (DN 24-2-3, PageID.295-96). He states, "The personal actions that were committed by the Defendants were listed in the disciplinary reports, and the incident report summaries that were filed with the Plaintiff's disciplinary report." (DN 24, PageID.285). Plaintiff argues that "all issues were listed in the Plaintiff's disciplinary reports making them non-grievable . . . ." (*Id.*)

Plaintiff further asserts that Defendants are using Grievance/Legal Coordinator Holcomb's affidavit "in an attempt to manipulate the court with his statements." (DN 24, PageID.287). He states that Defendants' counsel did not ask Holcomb whether the "'issues that are now being raised in civil court [are] non-grievable issues.' . . . because [Holcomb] would have answered in the affirmative that they are non-grievable issue and the Plaintiff does not have to file a grievance." (*Id.*) In addition to CPP 14.6(II)(C), Plaintiff also attaches to his response his affidavit in which reiterates these argument under oath (DN 24-1, PageID.292-94) and his disciplinary report forms (DN 24-4, Page ID.297-305).

In Defendants' reply to Plaintiff's first response, they contend that they have established through Holcomb's affidavit that "Plaintiff failed to even attempt do anything whatsoever to pursue an administrative remedy regarding the allegations contained in this lawsuit." (DN 19, PageID.227-28). They argue that they have established that an administrative remedy was available to Plaintiff through CPP 14.6 attached to their motion. (DN 19, PageID.228). They

assert that the burden shifted to Plaintiff to prove that an administrative remedy was unavailable and that Plaintiff provided no such proof.  (*Id.*)  Defendants cite cases to argue that the "Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered theses remedies unavailable."  (*Id.*)  They also maintain that the Sixth Circuit "'has consistently analyzed whether an inmate's efforts to exhaust were sufficient under the circumstances, but in each case, the prisoner did *something*.'"  (*Id.*)  And they point to cases supporting the mandatory nature of the PLRA's exhaustion requirement. (DN 19, PageID.229).

After Plaintiff filed a second response, Defendants filed a second reply.  They quote and attach the Incident Reports from the two alleged incidents and the Disciplinary Reports issued against Plaintiff.  (DN 25, PageID.307-12).  Defendants again argue that Plaintiff has the burden of proving unavailability of the administrative remedy.  (DN 25, PageID.313).  They maintain, "But before reaching the question of unavailability, Plaintiff must demonstrate that he has at least tried to utilize administrative remedies."  (*Id.*)  Defendants also again contend that the Sixth Circuit requires the prisoner to have done something when analyzing whether an inmate's efforts to exhaust were sufficient.  (*Id.*)  They argue that, in the cases cited by Plaintiff in his response, the prisoner had made some attempt to exhaust.  (*Id.*)  Defendants further assert, "Plaintiff appears to have had a subjective belief that his claims were non-grievable.  That does not absolve him of his exhaustion responsibility under the PLRA."  (*Id.*)  They continue, "If a mere subjective and self-serving claim of futility defeated the exhaustion requirement, it would negate and eliminate the requirement altogether, undermining the purposes of the PLRA." (DN 25, PageID.314-15).

## II.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter" its burden of showing

8

a genuine issue for trial.  *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010).

Yet statements in a verified complaint that are based on personal knowledge may function as the

equivalent of affidavit statements for purposes of summary judgment.  *Weberg v. Franks*, 229

F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions

under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997e.  The Supreme Court, interpreting § 1997e(e), has expressly stated:  "There is

no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be

brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S.

516, 524 (2002)).  Failure to exhaust administrative remedies is an affirmative defense, *id.* at

216, which the defendant has the burden to plead and prove by a preponderance of the evidence.

The PLRA requires exhaustion of internal remedies for "all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  To meet this

requirement, an inmate must "properly exhaust" his remedies, which requires strict compliance

with the grievance process provided by the prison.  *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006).

"Proper exhaustion" means that the plaintiff complied with the administrative "agency's

deadlines and other critical procedural rules because no adjudicative system can function

effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 90-

91.  To establish that he has exhausted his administrative remedies, a prisoner-plaintiff must have

presented his grievance(s) "through one complete round" of the established administrative

process.  *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *overruled in part on other grounds by Woodford v. Ngo*, 548 U.S. at 87.  An inmate must demonstrate that he has exhausted all available administrative remedies; when he fails to do so, dismissal of the complaint is appropriate.  *See, e.g.*, *Burden v. Price*, 69 F. App'x 675, 676 (6th Cir. 2003).  However, an inmate need only exhaust those remedies that are actually "available"; if an administrative remedy "is not capable of use to obtain relief," then the PLRA will not act as a barrier to suit.  *Ross v. Blake*, 578 U.S. 632, 642 (2016).

Defendants argue that they are entitled to summary judgment because Plaintiff failed to initiate a grievance concerning the alleged incidents of excessive force before filing this action.  They attach the affidavit of Grievance/Legal Coordinator Holcomb in support.  Plaintiff does not dispute that he failed to file a grievance.  He argues that he was not required to file a grievance on grounds that the grievance process was unavailable to him because the issues he would have raised were "non-grievable" under CPP 14.6(II)(C)(4).  Therefore, the motion for summary judgment turns on whether Plaintiff's arguments that the grievance process was unavailable to him are sufficient to excuse the exhaustion requirement.

However, the same argument has been addressed in a prior decision by the Eastern District of Kentucky.  That court rejected the plaintiff's argument that he was excused from the exhaustion requirement because his claims were non-grievable under CPP 14.6(II)(C) in *Padgett v. Goff*, No. 16-50-HRW, 2017 U.S. Dist. LEXIS 128923 (E.D. Ky. July 24, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 128427 (E.D. Ky. Aug. 14, 2017).  There, the plaintiff filed a grievance on his excessive-force claims, but the grievance was rejected by a prison official who stated, "According to CPP 14.6 disciplinary reports are non-grievable issues.  Because you received a disciplinary write up I cannot process this grievance."  *Id*. at *13.  The

Eastern District rejected the prison official's response to the plaintiff's grievance, reasoning as follows:

> Nothing in plaintiff's grievance facially pertains to his disputing any discipline imposed against him; instead, he sought to have defendants sanctioned for their alleged misconduct.  It is entirely plausible that both plaintiffs and defendants could, solely for purposes of argument, have engaged in behavior that would warrant the imposition of sanctions.  For example, plaintiff could have been verbally abusive or disrespectful to defendants, and in response defendants could have been physically abusive to plaintiff.  In such a hypothetical scenario, both plaintiff and defendants would have been potentially subject to disciplinary measures, and CPP 14.6(II)(B)(4) clearly states that complaints of "[p]ersonal action by staff" are grievable.  Consequently, [the prison official] was mistaken when she told plaintiff that he was raising non-grievable issues simply because he also happened to be sanctioned as a result of his role in the events.  That error, however, did not excuse plaintiff's failure to complete the four-step grievance process.

*Id.* at *15-16.  Therefore, because the inmate failed to complete the four-step grievance process, his excessive-force claims were dismissed for failure to exhaust administrative remedies.  *Id.* at *20.  The Court observes that *Padgett* does not set forth the precise language of CPP 14.6(II)(C) in effect at the time of the incident alleged in the case.  However, the Court finds its logic persuasive.

This is bolstered by the fact that Plaintiff's subjective belief that the issues were non-grievable does not excuse his failure to exhaust.  "[E]xhaustion is required even if the prisoner subjectively believes the remedy is not available; even when the state cannot grant the particular relief requested; and 'even where [the prisoners] believe the procedure to be ineffectual or futile . . . .'"  *Napier v. Laurel Cty.*, 636 F.3d 218, 222 (6th Cir. 2011) (citations omitted).  Moreover, where the Sixth Circuit has found that "[a] prisoner's lack of compliance may be excused if the administrative remedies are not available," it requires inmates to make "affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable."  *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015)

(quoting *Napier*, 636 F.3d at 223).  The Sixth Circuit has analyzed whether an inmate's efforts to exhaust were sufficient under the circumstances, but "in each case the prisoner did **something**." *Napier*, 636 F.3d at 224.

Because Plaintiff concedes that he did not file any grievance concerning the excessive-force claims he asserts, there is no dispute that he made no affirmative efforts to avail himself of the grievance procedure.  The rationale for requiring an inmate to make some effort to exhaust is borne out in this case.  Plaintiff claims that he could not have grieved his excessive-force and assault-and-battery claims because the issues were "non-grievable" under CPP 14.6(II)(C)(4), which he quotes as follows:  "Disciplinary procedures, Adjustment Committee decision, Unit Hearing Officer decision, Adjustment Officer decision, or Warden's review of these decisions, incident where the grievant received a disciplinary report, or incident where the grievant received a disciplinary report and the report has been dismissed."[2]  However, for example, Plaintiff attaches the disciplinary report he received in connection with the alleged incident involving Defendant Terorde, a charge of "enforcing or threatening gang activity," DR# KSR-2020-0001394.  The disciplinary report stated as follows:

> On May 17th, 2020 at approximately 8:34PM, while attempting to place inmate Dudley into the ERC, inmate Dudley began making verbal threats to all staff members involved in the cell extraction. Inmate Dudley stated "I'm a crip, I kill people." "I hope yall motherfuckers go back out to the yard, yall would die." "I am black chocolate and I'm going to kill you all for this shit."

(DN 45, PageID.301).

The disciplinary report does not concern and makes no reference to alleged excessive force or assault and battery by Defendant Terorde.  Plaintiff acknowledges this fact in discussing

---

[2] In Defendants' second reply in support of the motion for summary judgment, they argue that Plaintiff cites an earlier version of CPP 14.6(II)(C)(4) that was not in effect at the time of the incident.  However, the Court finds that the distinction is not pertinent to the Court's analysis and that Plaintiff failed to make any efforts to exhaust. Therefore, it need not address the issue herein.

the disciplinary report in his complaint, stating that Defendant Terorde "failed to include in his disciplinary report that he tased me twice while [seated] in the chair in leg restraints and hand cuffs." (DN 1, PageID.11). Thus, a grievance on Plaintiff's claims would not have fallen under the "non-grievable" provision of CPP 14.6(II)(C)(4). Plaintiff cannot be excused from the exhaustion requirement based on his mistaken belief that his claims were non-grievable. Even if Plaintiff argued that the policy was vague regarding his need to exhaust, "when a reasonable policy is in place, but is silent or vague in a particular circumstance, courts must look to see whether the prisoner has attempted to satisfy the requirements of the policy." *Napier*, 636 F.3d at 223.

Plaintiff cites to several cases in support of his argument that the grievance process was not available to him. However, in each of these cases, the inmate made some attempt to exhaust. In *Kelly v. Labelle*, No. 2:20-cv-00049, 2021 U.S. Dist. LEXIS 111615, at *11-12 (W.D. Mich. May 12, 2021), the inmate filed a grievance and Step II grievance appeal. In *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir 2004), the inmate wrote a letter to the warden about his complaints and had filed a previous grievance on the issue that was rejected as "non-grievable." And in *Reeves v. Hobbs*, No. 11-6047, 2013 U.S. Dist. LEXIS 141106, at *7-8 (W.D. Ark. Sept. 30, 2013), the inmate filed multiple grievances on the issue.

Because Plaintiff concedes that he did not file any grievance concerning the excessive-force claims he asserts, the Court finds that Defendants have met their burden of establishing a lack of genuine issue of material fact that Plaintiff failed to exhaust administrative remedies as required under the PLRA, and the § 1983 claims must be dismissed without prejudice. *See Bell v. Konteh*, 450 F.3d 651, 653 n.4 (6th Cir. 2006) ("It is well established . . . that the appropriate

disposition of an unexhausted claim under the PLRA is dismissal without prejudice.") (citations omitted).

Finally, having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over his state-law assault-and-battery claims. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim" in situations when "the district court has dismissed all claims over which it has original jurisdiction."); *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 849 (6th Cir. 2012). Accordingly, the Court will dismiss Plaintiff's state-law claims without prejudice.

## IV.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Defendants' motion for summary judgment (DN 16) is **GRANTED**.  The Court will enter a separate Judgment dismissing the action.

(2)     The Court having determined that Defendants are entitled to summary judgment, Plaintiff's motion for partial summary judgment (DN 12) is **DENIED**.

(3)     Defendants' motion for protective order (DN 15) and Plaintiff's motion to subpoena documents and video footage (DN 21) are **DENIED as moot**.[3]

Date:    February 16, 2022

**David J. Hale, Judge**
**United States District Court**

cc:    Plaintiff, *pro se*
        Counsel of record
4415.010

---

[3] The Court has reviewed each of these motions and finds that they have no bearing on the exhaustion issue.

14